# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| IN RE: LORING EDWIN JUSTICE | ) | No. 1:11-MC-3 |
| BPR # 019446 | ) | CHIEF JUDGE REEVES |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This is an unusual matter of reciprocal attorney discipline regarding Loring Justice ("Justice"). Previously, Justice was subjected to attorney discipline in the Eastern District of Tennessee in the form of a six-month suspension due to unethical conduct before the Honorable District Judge Thomas W. Phillips. Subsequently, the Tennessee Board of Professional Responsibility initiated a separate disciplinary proceeding, during which Justice repeated numerous misrepresentations regarding his conduct, despite this Court's previous admonitions. Due to Justice's conduct and continued misrepresentations during the state disciplinary proceedings, Justice was disbarred in Tennessee effective August 1, 2019. Consequently, Justice is back before this Court for reciprocal discipline.

This Court issued a Show Cause Order noting Justice's discipline by the Tennessee Supreme Court and requiring Justice to demonstrate why disciplinary action should not be taken against him. [Doc. 81]. Upon Justice's response [Doc. 82], the matter was referred to the Honorable Christopher H. Steger, United States Magistrate Judge, for review and recommendation. [Doc. 83]; *see* E.D. TENN. L.R. 83.7(h).

This matter is now before the Court on the Report and Recommendation ("R&R") filed by Judge Steger [D. 91], regarding the disposition of the attorney discipline matter and Justice's Motions to Deem Show Cause Order Satisfied or Alternatively Request for Full Evidentiary

Hearing" ("Hearing Motion"), [Doc. 85], and "Motion on Local Rule 83.5(a)(6) and Request for Application of Loring Justice to Eastern District of Tennessee" ("Local Rule Interpretation Motion"), [Doc. 87]. The R&R recommends that Justice be disbarred from the practice of law in the United States District Court for the Eastern District of Tennessee. Further, the R&R recommends that this Court deny Justice's Hearing Motion and Local Rule Interpretation Motion. Justice then raised seven objections to the R&R. [Doc. 93].

For the reasons that follow, the Court finds Justice's objections to be without merit and all seven objections are overruled. The R&R will be adopted. Justice's Hearing Motion will be denied. Justice's Local Rule Interpretation Motion will be denied.

Further, the Court finds that Justice is no longer "entitled to practice in the court" of Tennessee, the state "identified on [Justice's] application for admission," as required by Local Rule 83.5(a)(6). No infirmities have been identified in the Tennessee disciplinary proceedings that would cause this Court to disregard that condition created by Justice's disbarment in the state of Tennessee. Consequently, the Court has determined that reciprocal disciplinary action is warranted, and Justice will be disbarred in the Eastern District of Tennessee.

## I.    Nature of the Proceedings

This Court has the inherent power and responsibility to oversee the conduct of attorneys that practice in the Eastern District of Tennessee. *See In re Moncier*, 550 F. Supp. 2d 768, 772 (E.D. Tenn. 2008); *see also In re Landstreet*, 490 F. App'x 698, 701–02 (6th Cir. 2012) ("The district court has inherent duty and responsibility to supervise the conduct of attorneys appearing before the court."). Attorney disciplinary proceedings are part and parcel of that solemn responsibility. "A disciplinary proceeding is neither criminal nor civil; rather, it is an investigation into the lawyer's conduct to determine whether the lawyer may continue to practice a profession

that is imbued with the public interest and trust." *In re Landstreet*, 490 F. App'x at 702 (quotations omitted).

This Court requires that the attorneys of its bar "be currently admitted to practice in the highest court of a state, territory, or the District of Columbia." E.D. TENN. L.R. 83.5(a)(1). Once an attorney is admitted to the bar of the Eastern District of Tennessee, their admission entitles "an attorney to practice in this Court while and so long as he or she remains in good standing in this Court and is entitled to practice in the court of the state, territory, or District of Columbia identified on the attorney's application for admission." *Id.* at (a)(6). Consequently, when a member of this bar is no longer entitled to practice in the court of the state identified in their application to the Eastern District of Tennessee, that attorney is no longer entitled to practice in before the courts of the Eastern District of Tennessee.

Accordingly, "[t]he Court may also discipline any member who has been suspended or disbarred from the practice of law by the state in which he or she is a member, or by any court of record." E.D. TENN. L.R. 83.7(a). Commonly called "reciprocal discipline," this type of discipline flows from this Court's inherent authority to suspend or disbar lawyers due to the lawyer's role as an officer of the court which granted admission. *In re Snyder*, 472 U.S. 634, 643 (1985). When the professional standards for Tennessee attorneys, for attorneys in the Eastern District of Tennessee, or both, are violated, this Court bears the unwelcome, but necessary, task of imposing discipline upon the offending attorney. When an attorney transgresses both the standards of the bar of the Eastern District of Tennessee and the professional standards for all Tennessee attorneys, then duplicates that wrongdoing without contrition, as is the case here, this Court must solemnly and soberly impose an appropriate sanction for that attorney's misconduct.

## II.  Background[1]

### A.  Initial Disciplinary Proceedings in the Eastern District of Tennessee

On September 26, 2011, then-Chief Judge Collier issued a Show Cause Order pursuant to Local Rule 83.7 informing Justice of several factual allegation that had been levied against Justice regarding a fee petition he had submitted during litigation before the Honorable Thomas Phillips, United States District Judge.  Justice responded and Judge Collier held lengthy proceedings, including a substantial evidentiary hearing, to determine if Justice had engaged in unethical conduct.  Judge Collier made numerous factual findings regarding Justice's conduct and found that Justice "engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation" and "intentionally offered evidence to the court that [Justice] knew to be false," among other findings of misconduct. [Doc. 25].  As a result of Judge Collier's findings, Justice was suspended for a term of six months.

### B.  State Disciplinary Proceedings

Justice's conduct was also reported to the Tennessee Board of Professional Responsibility (the "Board").  Tennessee's investigation was held in abeyance until this Court concluded its disciplinary action.  Following Judge Collier's institution of discipline, the Board petitioned for state attorney discipline against Justice.  The state disciplinary action came before a Hearing Panel of the Board of Professional Responsibility ("Hearing Panel").  During the proceedings before the Hearing Panel, Justice chose to testify in his own defense, but challenged the circumstances under which he chose to do so.  Following the proceedings, the Hearing Panel made independent factual findings regarding Justice's unethical conduct regarding the fee petition, Justice's dishonesty before Judge Collier, and Justice's dishonesty before the Hearing Panel.  These factual findings

---

[1] A detailed background of the case can be found in the R&R [D. 91].

stood in accord with Judge Collier's previous factual findings. The Hearing Panel suspended Justice from the practice of law in Tennessee for one year.

Both Justice and the Board filed petitions for certiorari to the Chancery Court for Knox County, Tennessee (the "certiorari court"). Justice argued that his Fifth Amendment privilege against self-incrimination had been violated and the discipline was too severe; the Board argued that the discipline was too lenient, and that disbarment was appropriate. Senior Judge Robert E. Lee Davies considered the appeal on the record and briefs of the parties, and determined that disbarment was the appropriate remedy, though the certiorari court was "reluctant" to impose disbarment. *Bd. of Prof'l Responsibility v. Justice*, No. 189418-3, slip op. at 26 (Knox Cty. Ch. Ct. Feb. 2, 2017).[2]

Justice moved to alter or amend the judgment, in which he spewed a flurry of attacks on the integrity of Judge Davies, the certiorari court, and the Hearing Panel. Judge Davies then issued a Final Order, stating:

> Although the Court believed the sanction of disbarment was justified in this case, the Court acknowledges it was reluctant to impose such a severe sanction on Mr. Justice. However, any lingering doubt as to the disbarment of Mr. Justice has been obliterated by his motion to alter or amend. Justice blames everyone and everything for his predicament, other than his own misconduct. He impugns the Panel by suggesting they were motivated by a desire to curry favor with the Federal District Court. He impugns the integrity of the Board by suggesting that this entire proceeding is a "payback" because he represented clients who filed a complaint against an attorney with the Board. He impugns the integrity of the court reporter by suggesting that she destroyed her audio recording of one of the hearing days. He has made false assertions in his pleadings such as "the Board never requested Justice produce [the hand-written time records]." He has suggested that disciplinary counsel and the Court have had inappropriate communications, which is completely untrue. Finally, his pleadings demonstrate a

---

[2] Hereinafter all references to state opinions in this matter will be referred to by the case name "*Justice*" and will be distinguished by date and court.

> complete lack of respect and distain for the Court and this
> disciplinary proceeding.

*Bd. of Prof'l Responsibility v. Justice*, No. 189418-3, slip op. at 13 (Knox Cty. Ch. Ct. May 31, 2017).

The state disciplinary matter then came before the Tennessee Supreme Court on appeal, and the Tennessee Supreme Court affirmed the certiorari court's judgment in all aspects. *Justice v. Bd. of Prof'l Responsibility*, 577 S.W.3d 908, 911 (Tenn. 2019).[3] The Tennessee Supreme Court disbarred Justice in the state of Tennessee effective August 1, 2019. *Justice v. Bd. of Prof'l Responsibility*, No. E2017-01334-SC-R3-BP, slip op. (Tenn. July 22, 2019). On December 18, 2019, Justice filed a petition for a writ of certiorari to the United States Supreme Court. *See* Petition for Writ of Certiorari, *Loring Edwin Justice v. Bd. of Prof'l Responsibility*, No. 19-813 (Dec. 18, 2019). That petition was denied on February 24, 2020. *Justice v. Bd. of Prof'l Responsibility*, No. 19-813, 2020 WL 871783, at *1 (U.S. Feb. 24, 2020).

### C. Reciprocal Disciplinary Proceedings

In the interim on July 3, 2019, this Court issued a Show Cause Order directing Justice to demonstrate why his disbarment in Tennessee should not result in discipline in the Eastern District of Tennessee. [Doc. 81]. Justice responded on July 25, 2019, [Doc. 82], and the matter was referred to the Honorable Christopher H. Steger, United States Magistrate Judge, for a report and recommendation. [Doc. 83]. Judge Steger held a case management conference with Justice's counsel, Linn Guerrero, on August 22, 2019, confirming that an evidentiary hearing was not necessary or appropriate and setting oral argument. [Doc. 84]. Nevertheless, on October 1, 2019, Justice filed the Hearing Motion. [Doc. 85]. On October 4, 2019, Judge Steger held oral argument

---

[3] On December 18, 2019, Justice filed a petition for a writ of certiorari of this decision with the Supreme Court of the United States. Much of the text of that petition has been copied-and-pasted into Justice's present objections to the R&R.

on the reciprocal discipline matter. On October 7, 2019, Justice filed the Local Rule Interpretation Motion, in which he also requested a copy of his application for admission to the Eastern District of Tennessee. [Doc. 87]. A copy of Justice's application for admission to the Eastern District of Tennessee was filed, in which Justice identified his admission to practice in the Supreme Court of Tennessee as a basis for admission in the Eastern District of Tennessee. [Doc. 89]. On November 21, 2019, Judge Steger issued the R&R before the Court. [Doc. 91]. After considering the state court proceedings and Justice's filings and oral argument, Judge Steger recommended that Justice be disbarred from the practice of law in the Eastern District of Tennessee and that the Court deny Justice's Hearing Motion and Local Rule Interpretation Motion.

On December 10, 2019, Justice raised seven objections to the R&R, and many of his arguments overlapped with his petition for a writ of certiorari filed at the Supreme Court of the United States a week later. The Supreme Court has denied Justice's petition for a writ of certiorari in the state court proceedings and the objections before this Court are ripe for review.

### III.  Discussion of Justice's Objections

Justice raises seven objections to the R&R: (1) the Hearing Panel violated Justice's Fifth Amendment right against self-incrimination; (2) the R&R did not address whether Tennessee's proceedings were sufficiently "quasi-criminal"; (3) the R&R misapplied the *Rooker–Feldman* doctrine as defined in *In re Cook*, 551 F.3d 542 (6th Cir. 2009); (4) the R&R improperly found that Justice made an intelligent constitutional choice to testify; (5) the R&R did not find that the Board "outrageously prejudiced the [Hearing] Panel on the Fifth Amendment."; (6) the R&R did not adequately account for federal court independence; and (7) the R&R did not address other constitutional defects in the state court disciplinary proceedings. After reviewing the relevant standards of review, each objection will be addressed in turn.

### A. Standards of Review

#### 1. State Court Proceedings

Matters of reciprocal discipline are not a vehicle for appellate review of state disciplinary proceedings due to the *Rooker–Feldman* doctrine. *See In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction to perform appellate review of state court decisions, and the validity of state judicial proceedings may only be challenged in the Supreme Court of the United States under 28 U.S.C. § 1257. *Id.*; *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) ("[T]his Court's appellate jurisdiction over state-court judgments . . . precludes a United States district court from exercising subject-matter jurisdiction."); *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) ("The *Rooker–Feldman* doctrine is based on the negative inference that, if appellate court review of such state judgments is vested in the Supreme Court, then it follows that such review may not be had in the lower federal courts.").

However, the distinct nature of admission and practice in federal courts means that federal courts are "not conclusively bound by state disbarment orders." *In re Cook*, 551 F.3d at 549 (citing *Theard v. United States*, 354 U.S. 278, 282 (1957) ("[D]isbarment by federal courts does not automatically flow from disbarment by state courts."); *In re Crow*, 359 U.S. 1007, 1008–09 (1959) (Douglas, J., dissenting) ("State proceedings of disbarment, though presumptively correct, are not binding." (citing *Selling v. Radford*, 243 U.S. 46 (1917)). While state disbarment is not conclusively binding, a disbarment order issued by a state court is "entitled to respect," and "federal courts should proceed on the presumption that federal courts 'should recognize the condition created by the judgment of the state court.'" *In re Cook*, 551 F.3d at 549 (quoting *Selling*, 243 U.S. at 51).

When balancing federal court independence and "the condition created by the judgment of the state court," a federal court may impose reciprocal discipline arising from the state disciplinary proceedings unless:

(1) "[N]otice or opportunity to be heard was wanting in due process";

(2) "[T]here was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction . . . that [this Court] could not consistently with our duty accept as final the conclusion on that subject"; or

(3) "[S]ome other grave reason existed" that would not permit this Court "to allow the natural consequences of the judgment to have their effect" because doing so "would conflict with the duty which rests upon [this Court] not to disbar except upon the conviction that, under the principles of right and justice, [this Court is] constrained so to do."

*Id.* at 549–50 (quoting *Selling*, 243 U.S. at 51).

This is a narrow standard because this Court does not sit "as a court of review to discover error in the hearing judge's or the state courts' proceedings." *In re Zdravkovich*, 634 F.3d 574, 578 (D.C. Cir. 2011) (quoting *In re Sibley*, 564 F.3d 1335, 1341 (D.C. Cir. 2009)). Instead, the "burden of showing why the court should not impose reciprocal discipline rests with [the attorney]." *Id.* (quoting *In re Sibley*, 564 F.3d at 1340).

In short, reciprocal disbarment is not automatic, but "considerable weight" should be given "to the findings and conclusion of the state courts" as a federal district court exercises its independent duty to weigh the fitness of the members of its bar.

### 2. Report and Recommendation

On dispositive matters such as this, the Court makes "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b); *see also* E.D. TENN. L.R. 83.7(h)–(k).

### B.  The Penalty Exception Cases

Justice's first objection contends that the R&R wrongly finds that his testimony in the state proceedings was not unconstitutionally compelled.  Specifically, Justice argues that, regardless of the truthfulness of his testimony, his testimony was coerced in violation of his Fifth Amendment right against self-incrimination and prevents the R&R, and this Court, from considering his testimony in the state proceedings.  Justice also argues that "[t]he [R&R] can only be understood to find there is no unconstitutional compulsion in threatening an attorney with disbarment via adverse inferences if he invokes the self-incrimination clause."

At the outset, the Court notes that the R&R does not make a legal finding "that there is no unconstitutional compulsion in threatening an attorney with disbarment via adverse inferences if he invokes the self-incrimination clause."  While the Court disagrees with Justice's framing of the state proceedings, that precise legal question is properly directed to the Supreme Court, which Justice has done.[4]  Instead, the R&R reviewed the state proceedings under the proper standard of review to determine whether some "other grave reason existed" that should prevent "the natural consequences of the judgment to have their effect . . . under the principles of right and justice" regarding Justice's status as a member of this Court's bar.  *See In re Cook*, 551 F.3d at 550 (quoting *Selling*, 243 U.S. at 51)).  Through that lens, the R&R concludes that Justice's Fifth Amendment rights were not violated when he was compelled to sit for a deposition, as he was still free to decide which questions to answer, and that Justice validly waived his Fifth Amendment privilege before testifying, echoing the reasoning of the Tennessee Supreme Court.  In short, the R&R does not "refuse[] to address" Justice's arguments or "miss[] the issue," it simply found the Justice's arguments unavailing.  This Court concludes the same.

---

[4] *See* Petition for Writ of Certiorari, *Loring Edwin Justice v. Bd. of Prof'l Responsibility*, No. 19-813 (Dec. 18, 2019).

First, Justice argues that the R&R's finding, along with the Tennessee Supreme Court, that "[t]he Hearing Panel reserved its ruling on whether it would actually draw an adverse inference based on Mr. Justice's invocation of the privilege at his prehearing deposition until after the Board presented its proof so that it could determine whether the requirements of *Akers* had been satisfied," is false. Instead, Justice argues that the "[Hearing] Panel did not inform Justice of any such thing after the Board presented its proof," and he laments that he was "denied" an evidentiary hearing before this Court. This contention suffers numerous defects. Justice asserts that he was not *informed* of the Hearing Panel's reserved ruling on adverse inferences prior to testifying. Even if true, this assertion does not stand opposed to finding by the Tennessee Supreme Court and the R&R. Further, the Hearing Panel's March 9, 2015 "Findings of Fact and Conclusions of Law" reflect that the Panel expressly declined to take the requested adverse inference in that document at that time, which is consonant with finding made by the Tennessee Supreme Court and contained in the R&R. *In re Loring Edwin Justice*, No. 2013-2254-2-WM, slip. op. at 14–16 (Discipline Dist. II Hearing P. March 9, 2015). Further still, *Akers* requires a trier of fact to determine whether there is independent evidence of the *fact* to which the party refuses to testify *prior* to drawing any negative inference. *See Akers v. Prime Succession of Tennessee, Inc.*, 387 S.W.3d 495, 506 (Tenn. 2012). Under the requirements of *Akers*, the Hearing Panel could not have drawn any adverse factual inferences until the conclusion of the Board's proof. Justice also argues that this did not lead to waiver and that an evidentiary hearing is necessary; those contentions will be addressed later.

Second, Justice argues that he was unconstitutionally compelled to sit for a deposition, citing *Spevack v. Klein*, 385 U.S. 511 (1967), and *McKune v. Lile*, 536 U.S. 24 (2002). Merely being compelled to sit for a deposition does not violate an individual's Fifth Amendment rights.

Instead, the Fifth Amendment privileges an individual "not to answer official *questions* put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *In re Wiest*, 719 F. App'x 485, 491 (6th Cir. 2017) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (emphasis added). Justice was free to decide which questions he would answer, and the R&R indicates that Justice exercised this freedom during the deposition. Justice has never indicated otherwise. This argument is without merit.

Third, Justice argues that the Hearing Panel unconstitutionally "coerced" him into testifying when it "held an adverse inference over his head if he did not testify," repeatedly citing to *Spevack*. Justice's construction of *Spevack* is partially correct; the plurality holding in *Spevack* incorporates the Self-Incrimination Clause of the Fifth Amendment to the states and extends that right to attorneys in disciplinary proceedings. *Id.* at 514. But the Supreme Court has clarified the scope of *Spevack*, stating that the Supreme Court had "ruled that a lawyer could not be disbarred *solely* because he refused to testify at a disciplinary proceeding on the ground that his testimony would tend to incriminate him." *Gardner v. Broderick*, 392 U.S. 273, 277 (1968) (citing *Spevack*, 385 U.S. at 518) (emphasis added). Nevertheless, Justice contends that he was unconstitutionally coerced into testifying, citing the "Penalty Exception Cases."

The Fifth Amendment self-incrimination privilege is generally not self-executing. *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984) (citing *United States v. Monia*, 317 U.S. 424, 427 (1943)). An exception to the invocation of the privilege exists "where the assertion of the privilege is penalized so as to 'foreclos[e] a free choice to remain silent, and . . . compe[l] . . . incriminating testimony." *Id.* at 434 (quoting *Garner v. United States*, 424 U.S. 648, 661 (1976)). In these rare circumstances, waiver of the privilege may not be imputed to an individual who "succumbed to the pressure placed upon him" and testified. *Id.* Cases that discuss this rare exception, the so-

called "Penalty Exception Cases," stand for the proposition that a state may not impose or threaten to impose "*substantial penalties* because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977) (emphasis added). Stated differently for the present context, the *Spevack* plurality forbade "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly,'"[5] 385 U.S. at 515 (quoting *Griffin v. California*, 380 U.S. 609, 614 (1965), but "the exercise of the Fifth Amendment privilege" need not be "cost free." *McKune*, 536 U.S. at 41–42.

Here, the Hearing Panel did not threaten to impose "substantial penalties" on Justice if he elected not to testify, nor did it make the choice not to testify "costly." The Board requested that the Hearing Panel find adverse inferences pursuant to *Akers* and the Hearing Panel found *Akers* applicable to the proceeding; but the Hearing Panel withheld its determination of the applicability of the inference until after the presentation of evidence in accordance with *Akers*. Even then, the Panel exercised its discretion and elected *not* to apply an adverse inference. Pursuant to *Akers*, an adverse inference as to specific facts *may* be drawn should an individual in a civil proceeding invoke his right against self-incrimination in the face of corroborating evidence to support the fact. *See Akers*, 387 S.W.3d at 507.[6] Justice wrongly construes the risk of specific adverse inferences as to facts corroborated by other evidence as a threat of presumptive disbarment. This interpretation of his circumstances is untenable; Justice was not disbarred because he refused to testify, nor was he *threatened* with disbarment if he refused to testify.

---

[5] Meaning "of *great* cost or value" or "involving *excessive* expenditure." *Costly*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (2020) (emphasis added); *see also United States v. Alsante*, 812 F.3d 544, 548 (6th Cir. 2016) (stating that the "exercise of . . . self-incrimination rights" may not come "at a *significant* cost." (emphasis added)).

[6] Under *Akers*, "the privilege analysis is applied on a question-by-question basis, and 'therefore . . . the privilege necessarily attaches only to the question being asked and the information sought by that particular question." *Akers*, 387 S.W.3d at 507 (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000)). Consequently, "for an adverse inference to be permitted, a plaintiff must present corroborating evidence regarding *the specific fact* to which the defendant refuses to answer. *Id.* at 506 (citing *Doe*, 232 F.3d at 1264–65) (emphasis in original).

*McKune v. Lile*, another progeny of the "Penalty Cases" bruited by Justice, also provides no support. 536 U.S. 24 (2002). *McKune* does echo *Spevack* that "[t]hreat of disbarment and the loss of professional standing, professional reputation, and of livelihood are powerful forms of compulsion." *McKune*, 536 U.S. at 40 (quoting *Spevack*, 385 U.S. at 516)). But, as stated, Justice faced no "threat of disbarment" if he chose to exercise his self-incrimination rights. *McKune* undercuts Justice's argument further:

> The criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. It is well settled that the government need not make the exercise of the Fifth Amendment privilege cost free.

*Id.* at 41–42 (quotations and citations omitted). In "adversary proceedings of a quasi-criminal nature," *In re Cook*, 551 F.3d at 549 (quotation omitted), attorneys do not have constitutional insulation from difficult judgments, even difficult judgments "of constitutional dimensions." *McKune*, 536 U.S. at 41 (quoting *McGautha v. California*, 402 U.S. 183 (1971)).

Justice protests that he was given "no choice except a choice between 'the rock and the whirlpool.'" *See Frost v. R.R. Comm'n*, 271 U.S. 583, 593 (1926). But Justice did not have to choose between Scylla and Charybdis. Like any similarly situated attorney facing discipline, Justice had to decide whether to testify based on the evidence that was before the Hearing Panel. While a possible adverse inference regarding specific facts may have even made that difficult decision more complex, it did not constitute a threatened penalty, let alone a *substantial* penalty. Every criminal defendant or attorney in disciplinary proceedings feels pressure when deciding whether to testify or remain silent. The pressure Justice felt to testify did not come from "illegitimate compulsion" or "economic sanctions," but from "the force of historical fact[s]"

related to Justice's conduct and "the strength of the [Board's] case built on these facts." *United States v. Alsante*, 812 F.3d 544, 548–49 (6th Cir. 2016) (citing *Williams v. Florida*, 399 U.S. 78, 84–85 (1970)). Stated differently, the *potential* risk that an adverse inference *may* be drawn regarding specific facts corroborated by other evidence was "too conditional to establish a conclusion that [the] testimony was compelled in contravention of the Fifth Amendment." *United States v. Stein*, 233 F.3d 6, 14 (1st Cir. 2000). Consequently, the specific contours of the choice Justice faced certainly does not constitute a "grave reason" that would lead this Court to disregard the natural consequences of the state disciplinary judgment.[7]

### C. "Quasi-Criminal"

Justice's second objection argues that the R&R "neglects that Tennessee administers its disciplinary cases in a way that is not quasi-criminal, in violation of the Constitution." Specifically, Justice asserts that "[b]ecause Tennessee ignored the Federal Supreme Court's precedents on the self-incrimination clause and the quasi-criminal nature of the attorney-discipline proceedings, the Tennessee decision cannot be given any credence in federal court." Justice also claims that his "compelled testimony" is the "sole improper ground" for the R&R's disbarment recommendation.

Much of the content of this objection is merely a redux of the previous objection regarding self-incrimination, which has already been addressed. Nevertheless, Justice also argues that "a proceeding cannot be both 'quasi-criminal' and 'civil,' as different standards of due process exist in each." In doing so, Justice attempts to extrude a meaning from "quasi-criminal" that the phrase does not hold. Tennessee, like many states, acknowledges the "quasi-criminal nature" of attorney

---

[7] Additionally, from a pragmatic standpoint, Justice's "testimony [before the Hearing Panel] was substantially the same as his testimony in Federal District Court." *Bd. of Prof'l Responsibility v. Justice*, Case No. 189418-3, slip op. at 6 (Knox Cty. Ch. Ct. Feb. 2, 2017). Justice's perpetuated misrepresentations before the Hearing Panel after Judge Collier's admonitions is exactly what makes this conduct so egregious.

disciplinary proceedings, *Moncier v. Bd. of Prof'l Responsibility*, 406 S.W.3d 139, 156–57 (Tenn. 2013), while following a civil model for the enforcement of attorney discipline. *See generally* TENN. SUP. CT. R. 9. Though the Tennessee Supreme Court affords attorneys robust due process protections during disciplinary proceedings, those rights "do not extend so far as to guarantee the full panoply of rights afforded to an accused in a criminal case." *Id.* at 156 (quoting *People v. Harfmann*, 638 P.2d 745, 747 (Colo. 1981)). The Tennessee Supreme Court is not alone in this view. *See In re Suarez-Jjimenez*, 666 F. App'x 2, 5 (1st Cir. 2016); *Comm'n on the Conduct of Attorneys v. Oliver*, 510 F.3d 1219, 1223 (10th Cir. 2007); *In re Surrick*, 338 F.3d 224, 233 (3d Cir. 2003); *Sealed Appellant 1 v. Sealed Appellee 1*, 211 F.3d 252, 254 (5th Cir. 2000); *In re Palmisano*, 70 F.3d 483, 486 (7th Cir. 1995); *In re Cordova–Gonzalez*, 996 F.2d 1334, 1336 (1st Cir. 1993); *Rosenthal v. Justices of the Supreme Court of Cal.*, 910 F.2d 561, 564 (9th Cir. 1990). Consequently, even if the state proceedings were both "quasi-criminal in nature" and "civil" in form, certainly no *Selling* infirmity arose from those coexisting characteristics. *See In re Cook*, 551 F.3d at 550 (quoting *Selling*, 243 U.S. at 51)).

Justice raises this contention as another vehicle to revisit his Fifth Amendment arguments. But the question before this Court is not whether attorneys enjoy a Fifth Amendment right against self-incrimination in state attorney discipline proceedings. Instead, the question is whether the circumstances of Justice's proceedings provide a "grave reason" to disregard the condition created by the state proceedings. The R&R concludes, and this Court agrees, that the facts of this matter do not provide such a "grave reason." This is not an "unconstitutional hostility toward the invocation of the self-incrimination clause," as Justice opines. The Court finds Justice's second objection to be meritless.

### D. *Rooker–Feldman* and *In re Cook*

Justice's third objection challenges the R&R's application of the *Rooker-Feldman* doctrine as it pertains to reciprocal discipline matters. Specifically, Justice asserts that the R&R "is unclear about the *Rooker Feldman* doctrine," and that the R&R "misunderstands *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009)." Justice also contends that "[t]he Magistrate [Judge] did not review the record of the Tennessee proceedings but only the Tennessee Supreme Court's characterization of them in its Opinion" and thus did not conduct "a truly independent review."

Justice's first contention arises from a misreading of the R&R. As the R&R states, it did "not interpret [Justice's] arguments as an attempt to set aside his state disbarment." [Doc. 91, at 13]. The R&R merely clarifies the scope of this Court's review of the state court proceedings in full alignment with the interplay between the *Rooker-Feldman* doctrine and the scope of a federal court's review when the Court "relie[s] on the record developed by the state courts." *In re Cook*, 551 F.3d at 548.

Justice's second contention arises from a misunderstanding of the law. As discussed, only three conditions of state court proceedings will compel a federal court to disregard the condition created by those proceedings: (1) procedural due process defects, (2) "such an infirmity of proof as to facts" that a federal court could not accept the state court's findings as final, or (3) some "other grave reason" that prevents the "natural consequences" of the judgment of the state court "under principles of right and justice." *In re Cook*, 551 F.3d at 550 (quoting *Selling*, 243 U.S. at 51). The R&R notes that Justice did not claim that he was denied procedural due process in the state proceedings and did not claim that the proceedings suffered from "an infirmity of proof as to facts." As for any "other grave reason," the R&R concludes that the state proceedings were not fundamentally flawed and that Justice's Fifth Amendment self-incrimination privilege was not

violated.  As discussed, this Court has also concluded that Justice's Fifth Amendment rights were not impinged.

Justice now argues that the state conclusions did suffer from "an infirmity of proof as to facts" and claims that he has held this position all along.  But neither his response, nor his Hearing Motion raised this argument as he claims.  Justice has not challenged any evidence *other* than the propriety of his testimony under the Fifth Amendment, which has already been discussed, and the burden of proof used, which will be discussed.  Justice claims that he challenged the testimony of Ben Kerschberg in his response and motion, [Docs. 82, 85], but no discussion of his testimony appears in either document.  Justice claims that he argued that "the case against him was totally circumstantial," but this vague contention also does not appear in either document.  "[A]bsent compelling reasons," parties may not "raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (citing *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998)); *see also Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996) ("[I]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").  Furthermore, as this Court previously arrived at the same factual conclusions as the state courts regarding the underlying fee petition misconduct, any claim that the state proceedings suffered from an "infirmity of proof" is a *non sequitur.*

Justice's third contention arises from a misconception about independent review and his burden in this reciprocal discipline matter.  Independent review in matters of reciprocal discipline does not require sifting through every jot and tittle of the record in a quest to find "garden-variety errors" or revisit "judgment calls." *See In re Barach*, 540 F.3d 82, 87 (1st Cir. 2008); *see also In re Cook*, 551 F.3d at 552 ([A]s in the case *sub judice*, because there is not a moving or complaining

party, the entire burden to show cause why disbarment is not warranted rests on [the respondent].”); *In re Kersey*, 402 F.3d 217, 218 (1st Cir. 2005) (The respondent bears the “twin burdens” to “ensure that th[e] whole of the record is furnished to the court in a timely manner and to identify the parts of the record upon which he relies.”) (quotations omitted)).  Likewise, the opinions of the Hearing Panel, the certiorari court, and the Tennessee Supreme Court are part and parcel of the state record that this Court reviews.  Put simply, Judge Steger did not “avoid examining the state proof.”  Instead, Justice abdicated his burden and did not raise any specific proof challenges, tactically choosing to focus on the form of the state proceedings and the legal conclusions of the state courts.  To be abundantly clear, the R&R reflects a fulfillment of the “duty resting upon us to determine for ourselves the right to continue to be a member of this Bar.” *Selling*, 243 U.S. at 50.

In sum, the R&R neither misapplies the *Rooker-Feldman* doctrine nor misunderstands *In re Cook*.  Judge Steger completed a sufficiently thorough, independent review of the state proceedings.  The Court finds Justice’s third objection to be meritless.

### E.  Intelligent Constitutional Choice

Justice’s fourth objection challenges the finding that his election to testify was an intelligent constitutional choice.  Justice again wrongly states that the Hearing Panel threatened him “with disbarment by adverse inferences” and that he was “afflicted with a threatened penalty.”  Justice’s choice to testify waived his Fifth Amendment rights.  “[W]aivers of Fifth Amendment rights must be ‘voluntarily, knowingly and intelligently’ made.” *United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir. 2010) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).[8]

---

[8] The Supreme Court has “made clear that an individual may lose the benefit of the [self-incrimination] privilege without making a knowing and intelligent waiver.” *Murphy*, 465 U.S. at 428 (citing *Garner v. United States*, 424 U.S. 648, 654 (1976).  But the Court will address Justice’s contention on its merits for the sake of clarity.

First, Justice's waiver was voluntary and the "product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). While Justice had a difficult choice whether to testify or not, "the Constitution does not . . . always forbid requiring him to choose." *McKune*, 536 U.S. at 41–42. Again, "the exercise of the Fifth Amendment privilege" need not be "cost free," *Id.*; it just cannot be "costly." *Spevack*, 385 U.S. at 515 (quoting *Griffin*, 380 U.S. at 614 (1965). As this Court has stated, the unrealized risk of possible adverse inferences as to specific facts was simply too conditional to be "costly" or coercive.

Second, Justice's waiver was knowingly and intelligently made. As the R&R recounts, Justice's legal credentials are substantial. Justice took time to consult with his attorney to consider his choices. Incredulously, Justice construes himself as a "victim" and argues that his credentials are irrelevant as to the intelligence of his decision, because he did not know whether adverse inferences would be drawn or not. But for a waiver to be "knowing and intelligent" it need only be "made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The record reflects that Justice knew of his Fifth Amendment rights and the consequences of the decision to abandon it. The Court finds Justice's fourth objection to be meritless.

### F. Outrageously Prejudiced the Panel on the Fifth Amendment

Justice's fifth objection is that the R&R did not appreciate that the Board "outrageously prejudiced the [Hearing] Panel on the Fifth Amendment." Citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976), Justice claims that "invoking the Fifth Amendment privilege in quasi-criminal proceedings will not result in an adverse inference against the accused and any attempt to penalize or prejudice results in a judgment of acquittal." But *Baxter* states that a Fifth Amendment issue

arises when "refusal to submit to interrogation and to waive [th]e Fifth Amendment privilege, *standing alone and without regard to the other evidence*, resulted in loss." *Id.* (citing *Garrity v. New Jersey*, 385 U.S. 493 (1967); *Lefkowitz v. Turley*, 414 U.S. 70 (1973)).[9]

Here, the Hearing Panel reviewed other evidence and withheld any adverse inferences until facts could be corroborated by other evidence. Ultimately, the Hearing Panel elected not to find any adverse inferences and made its findings based on the evidence. The Court finds Justice's fifth objection to be meritless.

### G. Federal Court Independence

Justice's sixth objection is that the R&R does not adequately reflect this Court's independence from the state court proceedings. Specifically, Justice contends that notice was insufficient in *these* proceedings and argues that the basis for discipline "changed" from "the mere fact of the Tennessee disbarment to the content of his compelled testimony in Tennessee."

First, notice was not insufficient in these proceedings. Notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shoemaker v. City of Howell*, 795 F.3d 553, 560 (6th Cir. 2015) (quoting *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950)). Curiously, Justice cites to *In re Ruffalo* to argue that notice for this reciprocal discipline case was deficient. *See In re Ruffalo*, 390 U.S. 544 (1968). But *In re Ruffalo* involved a federal court's imposition of reciprocal discipline despite deficient notice in the *state* disciplinary proceedings under the factors set forth in *Selling*, which have been discussed at length herein. Rather, in instances of reciprocal discipline, the Sixth Circuit has stated that, [i]n view of the

---

[9] Further still, *Baxter* goes on to state "that in proper circumstances silence in the face of accusation is a relevant fact not barred from evidence," 425 U.S. at 319, and that "silence is often evidence of the most persuasive character." *Id.* (quoting *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153–54 (1923)).

respect and practical deference afforded to state court judgments, federal courts may initiate a disciplinary inquiry and even disbarment proceedings *based solely on an attorney's disbarment by a state court.*" *In re Cook*, 551 F.3d at 549; *see also Theard*, 354 U.S. at 282 (noting that the federal disbarment proceedings may be properly initiated where the "accusation rests [solely] on disbarment by a state court" because "such determination of course brings title deeds of high respect."). Further still, federal courts have been admonished that they "should recognize the condition created by the judgment of the state court." *Selling*, 243 U.S. at 51.

Second, the "theory" for disbarment has not "changed" and was adequately noticed when these proceedings were initiated due to Justice's Tennessee disbarment. Federal courts are instructed not to "shut our eyes to the status . . . of unworthiness to be a member" which a disbarment judgment "must be treated as having established." *Selling*, 243 U.S. at 50. Indeed, this Court must "recognize the absence of fair private and professional character inherently arising as the result of the action of the" Tennessee Supreme Court. The Tennessee Supreme Court disbarred Justice in part due to conduct that this Court has previously sanctioned and refrains from sanctioning further. The Tennessee Supreme Court *also* disbarred Justice due to his conduct during the disciplinary proceedings, which the R&R emphasizes. This emphasis does not reflect a "change in theory" for disbarment; Justice's claim of insufficient notice is without merit.

Further, the R&R's emphasis on Justice's continued misrepresentations before the Hearing Panel is warranted. When Judge Collier initially imposed discipline on Justice, he admonished Justice regarding an attorney's duty of candor. [Doc. 25 at 2, Page ID # 1716]. Judge Collier stated that, "what is at the heart of this matter is whether Respondent was candid and honest with the court." [*Id.*]. Judge Collier found by clear and convincing evidence that Justice was found to have engaged in dishonest conduct before Judge Phillips. Further, Judge Collier found by clear

and convincing evidence that Justice was not truthful during the initial disciplinary proceedings and showed no remorse for his dishonesty. [*Id.* at 37–62, Page ID ## 1751–1776].  Even though Justice was found to have been dishonest before two courts, Justice chose to advance the same misrepresentations in his arguments and testimony before the Hearing Panel, the certiorari court, and the Tennessee Supreme Court.  For that dishonest conduct, along with his unethical fee petitions, Justice was disbarred in Tennessee.  However, Justice's continued dishonest conduct, refusal to accept responsibility, and lack of remorse during the state disciplinary proceedings is particularly egregious to the Court in these reciprocal discipline proceedings.  In short, the Court finds Justice's sixth objection to be meritless.

### H.  Due Process, Fundamental Fairness, Clear and Convincing Evidence

Justice's seventh objection is that the R&R improperly relies on the state proceedings due to an inconsistent burden of proof, a *Withrow* violation, and an unconstitutional disciplinary system.

### 1.  Burden of Proof

Justice correctly states that this Court applies a "clear and convincing evidence" standard to attorney disciplinary matters, E.D. TENN. L.R. 83.7(i)(4), while Tennessee disciplinary proceedings apply a "preponderance of the evidence" standard.  *See, e.g.*, TENN. SUP. CT. R. 9, § 15.2(h).  However, Justice is incorrect that this lower burden of evidence means that this Court "could not use reciprocal discipline."

As the Court has mentioned, this is a rather unusual case of reciprocal discipline.  Judge Collier has already found by clear and convincing evidence that Justice unethically submitted fee petitions to the Court, among other determinations.  Tennessee completed an independent inquiry and came to the same conclusion, finding that Justice made statements to Judge Collier "which

were false and that Justice knew to be false." Tennessee *also* came to the conclusion that Justice continued to make false statements during the state disciplinary process, including "submission of false evidence" and "false statements or other deceptive practices during the disciplinary process." *Justice*, 577 S.W.3d at 922.[10] After the Knox County Chancery Court concluded that disbarment was the appropriate sanction upon certiorari review of the Hearing Panel, Justice subsequently moved to alter or amend that judgment. In the Final Order denying that motion, Senior Judge Robert Davies recounted the propriety of disbarment based on Justice's conduct during the state disciplinary proceedings:

> Justice blames everyone and everything for his predicament, other than his own misconduct. He impugns the Panel by suggesting they were motivated by a desire to curry favor with the Federal District Court. He impugns the integrity of the Board by suggesting that this entire proceeding is a "payback" because he represented clients who filed a complaint against an attorney with the Board. He impugns the integrity of the court reporter by suggesting that she destroyed her audio recording of one of the hearing days. He has made false assertions in his pleadings such as "the Board never requested Justice produce [the hand-written time records]." He has suggested that disciplinary counsel and the Court have had inappropriate communications, which is completely untrue. Finally, his pleadings demonstrate a complete lack of respect and distain for the Court and this disciplinary proceeding.

*Bd. of Prof'l Responsibility v. Justice*, No. 189418-3, slip op. at 13 (Knox Cty. Ch. Ct. May 31, 2017). Regardless of standards of proof,[11] the *veracity* of Justice's arguments and testimony

---

[10] The Hearing Panel recounted several specific instances where Justice was untruthful regarding factual details throughout the state disciplinary process. *In re Loring Edwin Justice*, No. 2013-2254-2-WM, slip. op. at 14–16 (Discipline Dist. II Hearing P. March 9, 2015) (¶ 42, "Justice claimed he worked the amount of time reflected on the fee petition or more. The Panel finds his testimony in this regard is not credible."; ¶ 44, "Justice's claim that this email was his way of telling Kerschberg that he was applying the 'Chamberlain' principle is not plausible."; ¶ 46, "Justice provides different and contradictory reasons why the entries on the fee petition and Kerschberg bills were identical."; ¶ 50, "This explanation is also not plausible."; ¶ 51, "Justice testified that Rickman was "primarily" responsible for the itemization of entries on the fee petition. . . There is not a single entry claiming Rickman actually worked on the itemized fees and expenses submitted with the fee petition."; ¶ 53, "Justice's answers to other questions posed by the Panel regarding the fee petition were often evasive.").

[11] "*In re Ruffalo* did not address the burden of proof to be applied in a disciplinary proceeding." *In re Watson*, No. 00-46, 2000 WL 34507666, at *5 (5th Cir. Oct. 4, 2000) (citing *In re Ruffalo*, 390 at 550).

during the state disciplinary proceedings is contradicted by Judge Collier's prior factual findings by clear and convincing evidence. Regardless of standards of proof, the R&R concluded that the record provided ample indication that Justice violated "separate but identical obligations of candor and honesty to the applicable state tribunals."

### 2. *Withrow* Violation

Justice also claims that the state proceedings stand in violation of *Withrow v. Larkin*. 421 U.S. 35 (1975). Essentially, Justice argues that several grounds compromised the impartiality of the state adjudicators in violation of his due process rights. First, Justice argues that, because all parties in the attorney discipline process are "in the first degree of relationship to the Tennessee Supreme Court," the process itself is insufficiently impartial. Second, Justice argues that, because a member of the Hearing Panel, Michael King, has practiced asbestos defense litigation and Justice has practiced asbestos plaintiff litigation, the Hearing Panel was insufficiently impartial. Third, Justice argues that, because the Hearing Panel questioned Justice at length, it took "on a prosecutorial role" in violation of his due process rights.

First, the centrality of the Tennessee Supreme Court in Tennessee's attorney discipline process does not violate due process. It is true that, in Tennessee, the "Board [of Professional Responsibility] is an administrative entity, not a judicial system," so some overlap between "investigative, prosecutorial, and adjudicative functions" is inherent. *Moncier v. Bd. of Prof'l Responsibility*, 406 S.W.3d 139, 159 (Tenn. 2013) (citing *Withrow*, 421 U.S. at 54–55). However, those functions are not *conflated* during the disciplinary process. The mere fact that all roles in the disciplinary process are directly connected to the Tennessee Supreme Court, simply does not lead to the conclusion that "the risk of unfairness [wa]s intolerably high." *Withrow*, 421 U.S. at 58.

Second, the argument that Mr. King's practice area rendered him unconstitutionally biased is absurd. Justice has made no argument that Mr. King had any pecuniary interest in the proceedings, that Mr. King previously targeted Justice with personal abuse or criticism, or that any other reason would, "under a realistic appraisal of psychological tendencies and human weakness," suggest any risk of actual bias or prejudgment on the part of Mr. King or any other member of the Hearing Panel. *Withrow*, 421 U.S. at 47. The Court does not take lightly Justice's willingness to baselessly impugn an adjudicator's integrity simply because he disagrees with the outcome.[12]

Third, the questioning of Justice by the Hearing Panel did not violate Justice's due process rights. "[T]he combination of investigative and adjudicative functions does not, without more, constitute a due process violation." *Id.* at 58. Instead, someone arguing that the adjudicator was unconstitutionally biased "must overcome a presumption of honesty and integrity in those serving as adjudicators." *Id.* at 47. Justice argues that the Hearing Panel questioned Justice for "several hours," converting the Hearing Panel into a prosecutor, citing *In re Murchison*. 349 U.S. 133 (1955). *In re Murchison* is wholly inapplicable to the proceedings at hand. In short, "the special facts and circumstances present in the case" before this Court simply do not support that "the risk of unfairness [wa]s intolerably high." *Id.*; *see also In re Zdravkovich*, 634 F.3d 574, 579 (D.C. Cir. 2011) ("[I]t would not matter legally even if the [state adjudicator] were more involved in the investigative process."); *Brooks v. New Hampshire Supreme Court*, 80 F.3d 633, 640 (1st Cir. 1996) ("The presumption of judicial impartiality cannot be trumped by free-floating invective,

---

[12] Unfortunately, the Court is not surprised by Justice's assault on the integrity of the Hearing Panel members, because he has already demonstrated a willingness to baselessly impugn judges and courts. Following his disbarment by the Tennessee Supreme Court, Justice publicly called the decision "disturbingly dishonest" and "a concoction of a corrupted and result-oriented court." Mike LaSusa, *Justice Served? Tenn. Tort Atty Disbarred for False Invoices*, LAW360 (July 2, 2019), *available at* https://www.law360.com/articles/1175147. Further, as Judge Davies previously recounted, Justice repeatedly challenged the integrity of both the state certiorari court and Judge Davies. *See Bd. of Prof'l Responsibility v. Justice*, No. 189418-3, slip. op. at 13–14 (Knox Cty. Ch. Ct. May 31, 2017).

unanchored to specific facts."). The Court does not agree that the state proceedings suffered any due process infirmities under *Withrow*.

### 3. Administrative Law

Justice also argues that the standard of review of attorney disciplinary matters, either by a certiorari court or the Tennessee Supreme Court, "offends the Constitution." Essentially, Justice again attempts to extract from the phrase "quasi-criminal in nature" a meaning that the phrase does not hold. Justice cites to several cases that stand for different propositions than those Justice attributes to them.

In sum, none of the arguments raise by Justice evidence a "defect in due process" or any "other grave reason" to afford the state proceedings any less deference than they are due. *See In re Cook*, 551 F.3d at 549 (citing *Selling*, 243 U.S. at 51). Justice's seventh objection is meritless.

## IV. Motion to Deem Show Cause Order Satisfied or Alternatively Request for Full Evidentiary Hearing

Justice also moved to deem the Show Cause Order satisfied and alternatively requested a full evidentiary hearing. The Court has already indicated that the Show Cause Order was not satisfied and that reciprocal discipline is necessary. No evidentiary hearing will be held because the record makes Justice's conduct readily apparent and Justice waived any right to another hearing.

### A. No Evidentiary Hearing is Necessary

Previously, after a four-day evidentiary hearing, Judge Collier "found, by clear and convincing evidence, that Justice knowingly submitted a false and inflated fee petition." *In re Justice*, 525 F. App'x 291, 293 (6th Cir. 2013). During the state disciplinary proceedings, which considered that same conduct, Justice both argued and testified contrary to that finding. These misrepresentations were one reason that Tennessee disbarred Justice, beyond the underlying false

and inflated fee petition. No evidentiary hearing could further elucidate the misrepresentations Justice made to the state tribunals—the Hearing Panel, the Chancery Court of Knox County, and the Tennessee Supreme Court—because they are a matter of record.[13]

### B. Any Right to a Hearing was Waived

Local Rule 83.7(e)(4) requires that the response to a Show Cause Order contain a "specific request for a hearing or a statement specifically declining a hearing." E.D. Tenn. L.R. 83.7(e)(4). Instead, Justice conditionally stated that, "[i]f the Court disagrees [with his filing], Justice would respectfully request a hearing and all rights to which he is entitled under the Local Rules of this Court." [Doc. 82, p. 14]. This qualified response does not comply with Local Rule 83.7(e)(4). Further, Judge Steger held a case management conference with Justice's counsel on August 22, 2019, who *confirmed* that an evidentiary hearing was not necessary or appropriate. The Supreme Court has "traditionally insisted that, whatever its form, *opportunity* for [a] hearing must be provided before the deprivation at issue takes effect." *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) (citing *In re Ruffalo*, 390 U.S. at 550—551) (other citations omitted) (emphasis added). However, "the hearing required by due process is subject to waiver." *Id.* (citing *Boddie v. Connecticut*, 401 U.S. 371, 378–79 (1971)); *see D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 185 (1972).

Though Justice changed his mind roughly six weeks later and filed this motion, Justice had already waived his right to a hearing by failing to comply with the procedures to request one. *See Lewis v. Whirlpool Corp.*, 630 F.3d 484, 490 (6th Cir. 2011) ("[D]ue process does not require a hearing, but instead an opportunity to be heard.") (citing *Logan v. Zimmerman Brush Co.*, 455

---

[13] Justice has again made these claims again in his petition for writ certiorari to the Supreme Court of the United States from the state disciplinary proceedings. Petition for Writ of Certiorari at 7–12, *Loring Edwin Justice v. Bd. of Prof'l Responsibility*, No. 19-813 (U.S. Dec. 18, 2019).

U.S. 422, 437 (1982)); *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004) ("[T]he availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure.").

### C.  Ample Opportunity to be Heard Has Been Provided

Furthermore, Justice has been given "'ample opportunity . . . to show cause why [he] should not be disbarred.'" *In re Cook*, 551 F.3d at 549 (quoting *Theard*, 354 U.S. at 282).  Justice made several filings and oral argument was heard on the matter.  Justice was given the opportunity to object to the report and recommendations made by Judge Steger.

In sum, an evidentiary hearing is unnecessary, Justice waived any right to a hearing, and Justice has been provided an ample opportunity to be heard.  This motion will be denied.

### V.  Motion on Local Rule 83.5(a)(6) and Request for Application of Loring Justice to Eastern District of Tennessee

Justice also filed this Local Rule Interpretation Motion as a vehicle to argue the scope of the subsection.  Justice construed the statements of Judge Steger at oral argument to mean that "if a lawyer is ineligible to practice in the state court identified on his application, he may not practice in the Eastern District."

Local Rule 83.5(a)(6) states that, following admission, an attorney is entitled "to practice in this Court, so long as he or she remains in good standing in this Court and is entitled to practice in the court of the state, territory, or District of Columbia identified on the attorney's application for admission." E.D. TENN. L.R. 83.5(a)(6).   Stated differently, disbarment in the state court that forms the basis for admission to the Eastern District of Tennessee may lead to disbarment in the Eastern District, so long as none of three circumstances identified in *Selling* exist. *See In re Walden*, 709 F. App'x 644, 645 (11th Cir. 2017); *see also In re Wiest*, 719 F. App'x 485, 489 (6th

Cir. 2017) ("[F]ederal courts presumptively recognize the disciplinary condition created by the judgment of the state court" unless the *Selling* factors are present.).

Here, Justice's membership in the Eastern District of Tennessee Bar relies on his admission to the Tennessee Supreme Court. [Doc. 89]; *see* E.D. TENN. L.R. 83.5(a)(1), (6). Consequently, this Court may disbar Justice because of his Tennessee disbarment, so long as no *Selling* infirmities were present in the Tennessee proceedings. *In re Walden*, 709 F. App'x at 645.

## VI.    Disposition of Reciprocal Discipline

Having addressed the R&R and the motions before the Court, the Court turns to the disposition of this case.

The Court finds that Justice is no longer entitled to practice in the Supreme Court of Tennessee, and that Justice's admission to that court formed the basis for his admission in the Eastern District of Tennessee. E.D. TENN. L.R. 83.5(a)(1), (6). Justice has not met his burden to demonstrate why he should not be reciprocally disciplined. After an independent review of the state disciplinary proceedings, this Court has determined that the proceedings did not suffer any *Selling* infirmities that would lead this Court to disregard the condition created by Justice's state disbarment. Namely, the Court does not find that:

    (1)  "[N]otice or opportunity to be heard was wanting in due process";

    (2)  "[T]here was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction . . . that [this Court] could not consistently with our duty accept as final the conclusion on that subject"; or

    (3)  "[S]ome other grave reason existed" that would not permit this Court "to allow the natural consequences of the judgment to have their effect" because doing so "would conflict with the duty which rests upon [this Court] not to disbar except upon the conviction that, under the principles of right and justice, [this Court is] constrained so to do."

*Id.* at 549–50 (quoting *Selling*, 243 U.S. at 51).

Furthermore, this Court agrees with the findings of the Supreme Court of Tennessee and finds that Justice continued to make misrepresentations about his conduct during the state disciplinary proceedings, despite this Court's previous admonitions during prior disciplinary proceedings before this Court. In doing so, Justice "engaged in unethical conduct tending to bring the Court or the bar into disrepute." E.D. TENN. L.R. 83.7(a). As a result, the Court will disbar Loring E. Justice from the United States District Court for the Eastern District of Tennessee.

**VII.    Conclusion**

In light of the foregoing, Justice's objections to the R&R [Doc. 93], are **OVERRULED**. After careful review of the record, the Court agrees with the R&R [Doc. 91] and hereby **ADOPTS** it. Justice's Hearing Motion [Doc. 85] is **DENIED**. Justice's Local Rule Interpretation Motion [Doc. 87] is **DENIED**. Loring E. Justice is reciprocally **DISBARRED** from the practice of law in the United States District Courts for the Eastern District of Tennessee.

**IT IS SO ORDERED.**

_____

**CHIEF UNITED STATES DISTRICT JUDGE**