# UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  August 26, 2021

Ms. Linn Guerrero
Law Office
200 Prosperity Drive
Knoxville, TN 37923

Re:  Case No. 20-5479, *In re: Loring Justice*
     Originating Case No. : 1:11-mc-00003

Dear Counsel,

   The Court issued the enclosed opinion today in this case.

                              Sincerely yours,

                              s/Cathryn Lovely
                              Opinions Deputy

cc:  Ms. LeAnna Wilson

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0407n.06

Case No. 20-5479

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

> **FILED**
> Aug 26, 2021
> DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| In re: LORING EDWIN JUSTICE, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| Petitioner. | ) | |
| | ) | OPINION |

BEFORE: GRIFFIN, LARSEN, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. The trial court described this case as "an unusual matter of reciprocal attorney discipline." Loring Justice practiced law in Tennessee. During a case that Justice was litigating in federal district court in the Eastern District of Tennessee, the court became suspicious of a fee petition that Justice had submitted. After conducting a hearing and finding discrepancies in a fee petition, the court suspended him. Justice then faced disciplinary proceedings in Tennessee arising out of that same conduct. The Tennessee Chancery Court, however, determined that Justice's earlier conduct combined with recalcitrant behavior during the state process warranted a stiffer sanction, and it disbarred him. The federal court then reciprocally disbarred him. The court noted, among other things, that Justice had made "repeated numerous misrepresentations" in the state disciplinary proceedings about his previous conduct in federal court—despite specific admonitions against doing so from the federal court.

Case No. 20-5479, *In re Justice*

Justice now appeals. He alleges that deficiencies in the Tennessee disbarment proceedings mean that the district court could not rely on them in its decision to disbar him. Because we find that no deficiency of due process, infirmity of proof, or other grave issue with the Tennessee proceeding requires reversal, and because the district court did not abuse its discretion by imposing reciprocal disbarment, we **AFFIRM**.

## I.

In 2000, Justice founded Loring Justice PLLC in Knoxville. *Bd. of Pro. Resp. v. Justice*, 577 S.W.3d 908, 911–12 (Tenn. 2019). In 2009, he represented Scotty Thomas in a personal injury lawsuit against Lowe's in the Eastern District of Tennessee ("the district court"). *Id.* at 912. During discovery, his firm located a human resource manager at Lowe's who had witnessed Thomas's injury. Lowe's had failed to disclose the manager to Justice. *Id.* Because of this failure, the district court held that Lowe's had failed to meet its discovery obligations, ordered it to pay Thomas "all reasonable attorney's fees and expenses incurred in locating and deposing [the witness]," and ordered Justice to provide an itemization and fee petition. *Id.*

Justice submitted both documents to the district court. *Id.* at 913. His itemization listed 371.5 billable hours worth more than $103,000 in attorney's fees. *Id.* Justice submitted a sworn declaration that he had worked 325.5 of the hours, while his paralegal—Benjamin Kerschberg— had worked eleven hours. *Id.*

A tip from Kerschberg's attorney raised the district court's suspicions about the billing. *In re Justice*, No. 1:11-3-mc-3, 2012 WL 2374677, at *3 (E.D. Tenn. June 22, 2012). Seventeen of the time entries for hours Justice submitted strongly resembled time entries for hours that Kerschberg had billed Loring Justice PLLC. The district court held a show cause hearing at which Justice testified that he had made no false statements in the fee petition. Unconvinced, the court

Case No. 20-5479, *In re Justice*

concluded that Justice had falsified multiple time entries and suspended his law license for six months.

The Tennessee Board of Professional Responsibility ("the Board") then petitioned for discipline against Justice based on the same misconduct. A Hearing Panel heard the case. Justice told the Board that he intended not to testify, and the Board filed a motion to compel his deposition. Justice moved to dismiss on the grounds that being compelled to give a deposition in an attorney discipline proceeding violated his rights under both the Tennessee and federal constitutions. The Hearing Panel denied Justice's motion. At the deposition, Justice exercised his Fifth Amendment right, declining to answer certain questions. *Justice*, 577 S.W.3d at 925. The Hearing Panel held that it could draw adverse inferences from Justice's silence but only if the Board presented evidence corroborating the inferred facts. Eventually, however, the Hearing Panel drew no adverse inferences.

The Panel reviewed evidence and heard testimony about Justice's conduct in federal court. Besides questioning Justice's candor in front of the Panel itself, it found that Justice knowingly made false statements to the federal court. The Panel determined that Justice had violated several ethical rules. And the Panel found six aggravating factors, including a pattern of misconduct, the refusal to acknowledge the wrongful conduct, and the submission of false statements and evidence during the disciplinary process. The Panel also found two mitigating factors, including that the federal court had imposed its own sanction for Justice's conduct. It imposed a one-year suspension from practice and additional continuing legal education in ethics.

Both Justice and the Board appealed to the Knox County Chancery Court. The Board challenged the penalty imposed by the Panel as too lenient. Justice raised several issues related to the proceeding, including a Fifth Amendment challenge. That court affirmed the imposition of

Case No. 20-5479, *In re Justice*

discipline but found that the Panel erred in not considering the presumptive sanctions that American Bar Association Standard 5.11 imposes. Disbarment, rather than a suspension, was appropriate.

Justice moved to alter or amend the judgment. The Chancery Court rejected his arguments about its first order's sufficiency and added:

> [A]ny lingering doubt as to the disbarment of Mr. Justice has been obliterated by his motion to alter or amend. Justice blames everyone and everything for his predicament, other than his own misconduct . . . [H]is pleadings demonstrate a complete lack of respect and distain [sic] for the Court and this disciplinary proceeding.

(R. 90-3, Ch. Final Order, PageID # 5887–88.)

Justice then appealed to the Tennessee Supreme Court, which unanimously affirmed. *Justice*, 577 S.W.3d at 933. So he pressed on to the United States Supreme Court, which denied his petition for certiorari. *Justice v. Bd. of Pro. Resp.*, 140 S. Ct. 1212 (2020) (mem.).

After the Supreme Court rejected his petition, the district court issued a Show Cause Order directing Justice to explain why it should not disbar him under Eastern District of Tennessee Local Rule 83.7. Justice moved for the court to consider the Show Cause Order satisfied or in the alternative for a full evidentiary hearing. The court referred the matter to a magistrate judge, who recommended the district court disbar Justice and deny his motion for an evidentiary hearing. The district court adopted the magistrate judge's Report and Recommendation and disbarred Justice. Justice now appeals that disbarment.

## II.

Justice presents several challenges to the Tennessee disbarment proceedings. We hold that none of them so infected the district court's determination as to require reversal.

Case No. 20-5479, *In re Justice*

## A.

To start, we note the limited scope of our review. Under the *Rooker–Feldman* doctrine, federal appellate courts lack jurisdiction to hear appeals from state judicial proceedings.[1] "The *Rooker–Feldman* doctrine is based on the negative inference that, if appellate court review of such state judgments is vested in the Supreme Court, then it follows that such review may not be had in the lower federal courts." *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008). Additionally, the doctrine recognizes that "the district courts are courts 'of original jurisdiction,' and they are not authorized by statute 'to exercise appellate jurisdiction over state-court judgments.'" *RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380, 395 (6th Cir. 2021) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005)); *see Feldman*, 460 U.S. at 482 n.16 ("[L]ower federal courts possess no power whatever to sit in direct review of state court decisions.") (quoting *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 269 (1970)); *Rooker*, 263 U.S. at 416 ("The jurisdiction possessed by the District Courts is strictly original."). We have no power of collateral review over Justice's state disbarment proceeding, and he properly pursued his direct challenge before the United States Supreme Court. *See In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009).

Federal courts may begin disciplinary proceedings based on a state-court disbarment, *id.* at 549, but the requirements for legal practice in federal and state courts are distinct. So federal courts "are not conclusively bound by state disbarment orders." *Id.*; *see Theard v. United States*, 354 U.S. 278, 282 (1957). And where a federal court relies on state disciplinary proceedings in reaching its decision, we can review whether alleged defects in the state proceeding "so infected [the] federal proceeding that justice requires reversal of the federal determination." *Cook*, 551 F.3d at 548

---

[1] *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923).

Case No. 20-5479, *In re Justice*

(footnote omitted) (quoting *In re Ruffalo*, 390 U.S. 544, 553 (1968) (White, J., concurring)). But even though state disciplinary orders are not "conclusively" binding on federal courts, *Ruffalo*, 390 U.S. at 547, they are entitled to "due respect," *Cook*, 551 F.3d at 549.

Thus, we "proceed on the presumption that federal courts 'should recognize the condition created by the judgment of the state court.'" *Id.* at 549 (quoting *Selling v. Radford*, 243 U.S. 46, 51 (1917)). An attorney can only rebut this presumption by showing one of three things:

> 1. That the state procedure from want of notice or opportunity to be heard was wanting in *due process*; 2, that there was such an *infirmity of proof* as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not consistently with our duty accept as final the conclusion on that subject; or 3, that some *other grave reason* existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do.

*Id.* at 549–50 (emphasis added) (quoting *Selling*, 243 U.S. at 51). We review any determinations made by the district court in disbarment proceedings for abuse of discretion. *In re Collis*, 556 F.2d 804, 805 (6th Cir. 1977).

We address Justice's arguments under the *Selling* framework.

**B.**

We begin with Justice's due process challenges. He argues that Tennessee applied the wrong standard of proof, that it gave him inadequate notice, and that bias and partiality marred its proceedings.

**1.**

Tennessee disbarred Justice under a preponderance of the evidence standard. Because attorney disciplinary proceedings are quasi-criminal, Justice argues that clear and convincing evidence was the appropriate standard, and that Tennessee thus violated his due process rights.

Case No. 20-5479, *In re Justice*

We have recognized that attorney disciplinary proceedings are quasi-criminal—they are neither civil actions nor criminal prosecutions, but their adversarial nature and stiff penalties entitle attorneys facing disbarment to procedural due process. *See Cook*, 551 F.3d at 549. That includes notice and "ample opportunity . . . to show cause why an accused practitioner should not be disbarred." *Id.* (quoting *Theard*, 354 U.S. at 282). Quasi-criminal proceedings often require a clear and convincing evidence standard. *See Addington v. Texas*, 441 U.S. 418, 424 (1979). The evidentiary standard for attorney discipline in the district court is clear and convincing evidence, E.D. Tenn. L.R. 83.7(i)(4), while the standard for a Tennessee hearing panel is a preponderance of the evidence, Tenn. Sup. Ct. R. 9 § 15.2(h). When reviewing the decision of an attorney discipline hearing panel, the Tennessee Supreme Court asks whether it was supported by substantial and material evidence but does not substitute its judgment for that of the hearing panel. Tenn. Code § 4-5-322(h)(5)(A). The substantial and material evidence cannot be a mere "scintilla or glimmer" but may be less than a preponderance of the evidence. *StarLink Logistics Inc. v. ACC, LLC*, 494 S.W.3d 659, 669 (Tenn. 2016).

Justice insists that using a preponderance standard at the hearing and a substantial and material evidence standard at the Tennessee Supreme Court means the district court could not rely on the Tennessee proceedings. We disagree. First, none of his authority supports his claim that the use of a preponderance of the evidence standard in a quasi-criminal proceeding is unconstitutional.[2] Second, he cites no authority for his claim that the Tennessee Supreme Court's substantial and material evidence standard violated his due process rights.

---

[2] There is significant diversity among the standards states use in professional discipline proceedings, although clear and convincing evidence seems to be the most common. *See generally* 7 Am. Jur. 2d *Attorneys at Law* § 111 (2021); Annotation, *Degree or Quantum of Proof Necessary to Justify Disbarment or Suspension of Attorneys*, 105 A.L.R. § 984 (2021). Several circuits—including this one—have adopted a clear and convincing standard for attorney discipline. *See, e.g.*, 6th Cir. R. 46(c)(8)(D); *In re Liotti*, 667 F.3d 419, 426 (4th Cir. 2011); *Crowe v. Smith*, 261 F.3d

Case No. 20-5479, *In re Justice*

Third, as Justice stresses, state court determinations do not bind federal courts in attorney discipline proceedings, and federal courts are free to arrive at their own conclusions. *See Ruffalo*, 390 U.S. at 547. In the Report and Recommendation, the magistrate judge reviewed the allegations against Justice and did not rubber-stamp the Tennessee Supreme Court's conclusions. And the district court found that Justice had violated the Tennessee Rules of Professional Conduct under a clear and convincing evidence standard during the initial proceedings before that court. *Justice*, 2012 WL 2374677, at *1. Justice has presented no evidence suggesting that the district court disbarred Justice on anything less than a clear and convincing evidence standard.

Tennessee's use of a preponderance of the evidence standard did not offend due process, does not rise to the level of a "grave reason" to cause us to question the outcome, and did not "so infect" the district court proceeding as to require reversal.

**2.**

Justice claims that the Chancery Court gave him insufficient notice of the basis of his disbarment because it commented on his conduct before that court in its final order. (R. 90-3, Ch. Final Order, PageID # 5887–88 ("[A]ny lingering doubt as to [Justice's disbarment] has been obliterated by his motion to alter or amend. Justice blames everyone and everything for his predicament, other than his own misconduct.")). He also argues that he received insufficient notice in his Show Cause Order and that the district court changed theories of disbarment without giving

---

558, 563 (5th Cir. 2001); *In re Fisher*, 179 F.2d 361, 369 (7th Cir. 1950). But three of the four states in this circuit use a preponderance standard. *See* Ky. Sup. Ct. R. 3.330(4) (preponderance); Mich. Ct. R. 9.115(J)(3) (preponderance); Tenn. Sup. Ct. R. 9 § 15.2(h) (preponderance); Ohio Sup. Ct. R. for the Gov't of the Bar 5 § 12(I) (clear and convincing).

Several of our sister circuits have held that a preponderance standard does not offend due process in professional discipline proceedings. *See, e.g.*, *Tsirelman v. Daines*, 794 F.3d 310, 316–17 (2d Cir. 2015) (holding that using a preponderance standard in a physician discipline proceeding was facially constitutional); *In re Barach*, 540 F.3d 82, 86–87 (1st Cir. 2008) (holding that a preponderance standard was a "constitutionally permissible choice" in attorney discipline proceedings); *see also In re Att'y Discipline Matter*, 98 F.3d 1082, 1086–87 (8th Cir. 1996) (affirming a district court's imposition of reciprocal disbarment when the attorney was originally disbarred based on a preponderance of the evidence). There appears to be no contrary circuit authority.

Case No. 20-5479, *In re Justice*

him a chance to respond.[3] His first argument fails because, as the Chancery Court stated, his conduct dispelled "any lingering doubt" that he deserved disbarment, but it did not alter its original judgment that "the sanction of disbarment was justified." (R. 90-3, Ch. Final Order, PageID # 5887.)

Justice also received adequate notice in his Show Cause Order. "Notice" must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Because attorney discipline proceedings are quasi-criminal, "[t]he charge must be known before the proceedings commence." *Ruffalo*, 390 U.S. at 551.

The Show Cause Order told Justice that "the Tennessee Supreme Court suspended[4] the law license of Loring Edwin Justice. Attorney Loring Edwin Justice is hereby ORDERED to SHOW CAUSE why he should not be suspended from the practice of law in the United States District Court, Eastern District of Tennessee." (R. 81, Show Cause Order, PageID # 5723.) It also directed the Clerk of Court to send Justice a copy of Eastern District of Tennessee Local Rule 83.7. That rule allows the district court to disbar any member of its bar who violates the Rules of Professional Conduct, engages in unethical conduct, brings the bar into disrepute, or is disbarred by any state or court of record to which she is admitted. E.D. Tenn. L.R. 83.7(a). This was adequate notice that Justice faced disbarment by the district court based on both his disbarment by Tennessee and his conduct in the Tennessee proceedings per Local Rule 83.7.

---

[3] Justice's argument about the district court's notice falls outside the *Selling* framework. 243 U.S. at 51. We address it alongside his other notice argument for simplicity's sake.

[4] It's unclear why the district court said Justice was "suspended," when the Tennessee Supreme Court affirmed his disbarment. But Justice never challenged this language in his response to the Show Cause Order, and his brief understands the order to threaten disbarment.

- 9 -

Case No. 20-5479, *In re Justice*

**3.**

Due process requires that the risk of unfairness in a disciplinary proceeding not be "intolerably high." *Withrow v. Larkin*, 421 U.S. 35, 58 (1975). Justice argues that the risk of unfairness was intolerably high in three ways: first, the Hearing Panel, the Board of Professional Responsibility, and the Chancery Court are all too closely connected to the Tennessee Supreme Court to be impartial; second, the Hearing Panel impermissibly blurred the lines between prosecutor and adjudicator; and third, the members of the Hearing Panel were biased against him.

"[A] 'fair trial in a fair tribunal is a basic requirement of due process,'" including before administrative panels like Tennessee's attorney discipline hearing panels. *Id.* at 46–47 (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). The possibility of bias on the part of an adjudicator may be constitutionally intolerable if the adjudicator has a "pecuniary interest" in the case or has been "the target of personal abuse or criticism from the party before him." *Id.* at 47 (footnote omitted). But an allegation that the mere combination of prosecutorial and adjudicative functions creates a constitutionally intolerable risk of bias "must overcome a presumption of honesty and integrity in those serving as adjudicators." *Utica Packing Co. v. Block*, 781 F.2d 71, 77 (6th Cir. 1986) (quoting *Withrow*, 421 U.S. at 47). While he need not prove "actual partiality," someone arguing that a proceeding violated his due process rights under *Withrow* must show that the proceeding did not appear fair or that outside forces probably influenced the adjudicator. *See id*.

Justice has not met that burden. First, Justice has failed to claim more than a combination of prosecutorial and adjudicative functions in the structure of Tennessee's attorney discipline regime. He offers no support for his claim that the Tennessee Supreme Court's disciplinary structure is an impermissible exercise of its long-established inherent authority to discipline lawyers admitted to practice before it. *See In re Snyder*, 472 U.S. 634, 643 (1985) (citing *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 378–79 (1867) and *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 531

- 10 -

Case No. 20-5479, *In re Justice*

(1824)). The mere fact that the Tennessee Supreme Court appoints the Board of Professional Responsibility and the Hearing Panel and that all attorneys admitted in Tennessee are subject to the Tennessee Supreme Court's oversight is not enough to overcome the honesty and integrity presumption. *See Utica Packing*, 781 F.2d at 77.

Second, the Hearing Panel did not impermissibly blur the lines between prosecutor and adjudicator. Justice points to *Murchison* as support for his claim that the extensive questioning by the Hearing Panel chair was improper. In that criminal case, a Michigan judge acted as a one-man grand jury. He summoned two witnesses to a closed hearing, questioned them, charged them with contempt, tried them in open court, found them guilty, and sentenced them. *Murchison*, 349 U.S. at 134–35. The Supreme Court held that the proceeding denied the witnesses due process because the judge had been part of the "accusatory process" and then tried a charge he himself had recommended. *Id.* at 137–38. And the judge could likely not prevent what he learned in the "one-man grand jury" session from influencing his judgment at trial. *Id.* But here Justice objects only that the Hearing Panel chair subjected him to extensive questioning. And we've held that adjudicators "[have] the duty to 'see that the issues are not obscured and that the testimony is not misunderstood,' and thus may interject [themselves] as appropriate." *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016) (quoting *United States v. Slone*, 833 F.2d 595, 597 (6th Cir. 1987)). Without more, Justice cannot overcome the presumption of "honesty and integrity." *See Utica Packing*, 781 F.2d at 77 (quoting *Withrow*, 421 U.S. at 47).

Third, Justice has not provided sufficient evidence of bias by his Hearing Panel. Justice argues that because he worked as an asbestos plaintiffs' lawyer and the panel chair had worked as an asbestos defendants' lawyer and had been counsel opposite Justice in the past, the panel chair had an impermissible pecuniary interest in the outcome of his proceeding. Putting aside the

- 11 -

Case No. 20-5479, *In re Justice*

weakness of this argument, Justice failed to raise the pecuniary interest argument before the district court. He therefore forfeited the argument, and he has offered no compelling reason for us to consider it. *See Swanigan v. FCA US LLC¸* 938 F.3d 779, 786 (6th Cir. 2019).

We hold that Justice has not shown a *Withrow* violation. Nor has Justice established any due process deficiencies in the state proceeding, let alone any that "so infected" the district court's determination to require reversal.

### C.

Justice claims that the Tennessee decisions suffer from an infirmity of proof because Kerschberg—the paralegal whose work Justice claimed as his own—recanted. The district court held that Justice had forfeited this argument when he failed to raise it in his either his response to the Show Cause Order or his objection to the magistrate's Report and Recommendation. Justice now insists that he raised the issue at a hearing before the magistrate judge. "[W]e have held that litigants may preserve an argument in the district court by raising it for the first time at a hearing, even when they neglected to make the argument in a pre-hearing filing." *United States v. Huntington Nat. Bank*, 574 F.3d 329, 332 (6th Cir. 2009) (cleaned up). But "the litigant not only must identify the issue but also must provide some minimal level of argumentation in support of it." *Id.*

Justice is right on the line. At a hearing before the magistrate judge, he asserted through counsel that "Mr. Kerschberg testified to taking Mr. Justice's notes to make his time entries for his invoices because Mr. Kerschberg was a contractor at the firm . . . That's a 180-degree flip from this guy stole my stuff and this is why." (R. 97, Hr'g Tr., PageID # 6038–39.) But he did not directly argue that this amounted to an infirmity of proof.

- 12 -

Case No. 20-5479, *In re Justice*

Even if Justice did preserve this argument, it does not show an infirmity of proof. The Tennessee Supreme Court already addressed the argument that Kerschberg recanted: "[w]hile Mr. Kerschberg acknowledged occasionally using Mr. Justice's handwritten comments to create some of the narratives for his invoices, he unequivocally and consistently testified that these narrative entries described his own work not Mr. Justice's." *Justice*, 577 S.W.3d at 930. The decision of the Tennessee Supreme Court is entitled to "due respect," *In re Squire*, 617 F.3d 461, 466 (6th Cir. 2010) (quoting *Cook*, 551 F.3d at 549), and comports with the findings of the district court in the original proceeding, *Justice*, 2012 WL 2374677, at *11–12. Justice has presented no evidence that causes us to question the Tennessee Supreme Court or the district court's decision.

We hold that reversal is not required by an infirmity of proof infecting the district court proceeding.[5]

## D.

Justice alleges that the Tennessee proceedings violated his Fifth Amendment right not to incriminate himself. We consider this argument under *Selling*'s "other grave reasons" prong.

Justice's primary objection to the Tennessee proceeding is that the Hearing Panel noted the possibility of drawing adverse inferences from his exercise of his Fifth Amendment right during his deposition before his decision to testify, which he argues violated his Fifth Amendment right against self-incrimination. Relying on *Akers v. Prime Succession of Tennessee, Inc.*, 387 S.W.3d 495 (Tenn. 2012), the Hearing Panel concluded it could draw an adverse inference, but only if independent evidence corroborated the facts that Justice refused to confirm. After the hearing, the Panel declined to draw any adverse inferences.

---

[5] Justice also argues that the district court should not have considered his allegedly compelled testimony, without which there would have been an infirmity of proof. We address and reject his Fifth Amendment claim below.

Case No. 20-5479, *In re Justice*

Justice now alleges (1) that his deposition was unconstitutionally compelled by the Hearing Panel, (2) that his testimony at his hearing was unconstitutionally compelled by the possibility of unlawful adverse inferences, (3) that he could not make an "intelligent constitutional choice" about whether to testify at his hearing, and (4) that the Board unconstitutionally prejudiced the Hearing Panel.

*First¸* Justice is wrong that compelling him to attend his deposition was unconstitutional. The Fifth Amendment reads: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. A trial court "cannot compel [a defendant] to answer deposition questions, over a valid assertion of his Fifth Amendment right." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 256–57 (1983) (footnote omitted). But merely requiring him to attend his deposition, at which he declined to testify, was constitutional.

*Second*, Justice was not compelled to give incriminating testimony. He's right that the Supreme Court has condemned efforts to penalize people for invoking the Fifth Amendment or refusing to waive their Fifth Amendment rights. In *Spevack v. Klein*, 385 U.S. 511 516 (1967), the Supreme Court ruled that the New York Bar could not disbar an attorney just because he had invoked the Fifth Amendment. And in several other cases, the Court held that requiring someone to waive their Fifth Amendment rights and penalizing them if they did not was also unconstitutional. *See Lefkowitz v. Cunningham*, 431 U.S. 801, 803, 808–09 (1977) (attorney divested of political party office); *Lefkowitz v. Turley*, 414 U.S. 70, 75–76, 84–85(1973) (architects threatened with loss of government contract); *Gardner v. Broderick*, 392 U.S. 273, 279 (1968) (police officer threatened with discharge); *Garrity v. New Jersey*, 385 U.S. 493, 499–500 (1967) (same).

- 14 -

Case No. 20-5479, *In re Justice*

But—at least in a civil proceeding—drawing an adverse inference isn't a penalty. In *Baxter v. Palmigiano*, the Supreme Court held that an inmate could choose to invoke the Fifth Amendment, but he could not prevent the prison disciplinary board from drawing an adverse inference from his silence. 425 U.S. 308, 318–20 (1976). The Court noted that silence is often persuasive evidence, and the board did not use defendant's silence for anything but the evidentiary value that it provided. *Id.* at 318–19. In a civil proceeding, using silence as evidence is constitutional; penalizing silence is not.

Tennessee's procedure here meets the requirements of current Supreme Court precedent. Tennessee recognizes that quasi-criminal proceedings like attorney discipline hearings require *some* due process protections, but not all those required in a criminal trial. *Moncier v. Bd. of Prof. Resp.*, 406 S.W.3d 139, 156 (Tenn. 2013) (citing *Ruffalo*, 390 U.S. at 551). There's no reason it can't apply the civil-case approach to adverse inferences in its attorney disciplinary hearings. We permitted adverse inferences in administrative hearings for revoking a license to prescribe controlled substances. *Hoxie v. Drug Enf't Admin.*, 419 F.3d 477, 483 (6th Cir. 2005). And the First Circuit treated a disbarment proceeding just like "any civil proceeding" where "the fact-finder could—but was not required to—draw an adverse inference" if the attorney chose not to testify. *United States v. Stein*, 233 F.3d 6, 16 (1st Cir. 2000).

And requiring a defendant to choose between competing goods in litigation isn't unlawful either. For example, a prison did not violate a death row inmate's Fifth Amendment right when his voluntary clemency interview came with no guarantees that the government would not use his answers against him in a future habeas proceeding. *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 286–88 (1998). And making a defendant in a single-verdict capital case choose between testifying (and offering potentially incriminating statements) or remaining silent (and being unable

- 15 -

Case No. 20-5479, *In re Justice*

to explain why he shouldn't be executed) wasn't unlawful compulsion. *McGautha v. California*, 402 U.S. 183, 220 (1971), *vacated on other grounds sub nom.*, *Crampton v. Ohio*, 92 S. Ct. 2873 (1972); *see also McKune v. Lile*, 536 U.S. 24, 41–43 (2002) (plurality) (choice between admitting wrongdoing to participate in a rehabilitation program or being transferred to a worse prison). Although a litigation choice may be difficult, that does not make it unconstitutionally compulsive. So Tennessee's proposed use of adverse inferences was constitutional, and Justice was not compelled to testify.

Justice stresses that the Hearing Panel "threaten[ed] [him] with disbarment by adverse inferences if he did not testify in a disbarment proceeding." (Appellant's Br. at 37.) But that is not true. The Hearing Panel concluded it could draw an adverse inference from Justice's silence under *Akers* if there was "corroborating evidence to support the fact under inquiry." (R. 90-1, H'rg Panel Op., PageID # 5845 (quoting *Akers*, 387 S.W.3d at 506)). That is, if some other evidence the Board presented corroborated a fact that Justice refused to speak to, the Hearing Panel could take Justice's silence as evidence for that fact. The Hearing Panel could not, on its own understanding, automatically take an adverse inference against Justice (let alone disbar him) for declining to testify.

Justice then argues that the Fifth Amendment does not allow for any adverse inferences or penalties for pleading the Fifth in bar disciplinary cases, citing *Spevack* and *McKune*. But *Spevack* held only that, contrary to a previous holding, lawyers were eligible to invoke the Fifth Amendment in disciplinary proceedings and could not be disbarred as a penalty for doing so. *Spevack*, 385 U.S. at 514. And *McKune* restates the holding of *Spevack* on attorney discipline proceedings in a case that otherwise shows the limits of the Fifth Amendment privilege. 536 U.S. at 40 (plurality opinion); *id.* at 49–50 (O'Connor, J., concurring). Neither case supports Justice's

- 16 -

Case No. 20-5479, *In re Justice*

claim that the Constitution does not permit adverse inferences from silence in a bar disciplinary hearing.

Justice's disbarment falls in line with *Woodard*, *McGautha*, and *McKune*, not *Spevack*, *Gardner*, and the other automatic penalty cases. He did not face an automatic penalty for refusing to waive his Fifth Amendment right. *See Spevack*, 385 U.S. at 516–18; *Gardner*, 392 U.S. at 278–79. Instead, he faced a choice between two possible consequences. If he did testify, he might incriminate himself, but if he did not testify, he might be unable to rebut the Board's arguments, leading to possible adverse inferences (though not without corroborating evidence) and possibly his disbarment. This choice, while unpleasant, does not turn a permissible adverse inference into unconstitutional compulsion. We conclude Justice was not compelled to testify in violation of the Fifth Amendment.

The First Circuit arrived at the same conclusion in *Stein*. 233 F.3d at 16–17.[6] In that case, an attorney wanted her disbarment testimony suppressed in a criminal proceeding because she claimed she was compelled to testify by the possibility of adverse inferences. *Id.* at 14. The First Circuit stressed that, "[w]hile refusal to waive the Fifth Amendment might increase the risk that she would be disbarred, disbarment would not result automatically and without more. Hence, she was not threatened with a penalty within the meaning of *Garrity* for invoking her Fifth Amendment

---

[6] Justice insists that *McKune* "clarified and overruled" *Stein*, so we are foreclosed from following its reasoning. (Appellant's Br. at 42–43.) But *McKune* didn't discuss *Stein* and distinguished the context of its own holding from *Garrity* and *Spevack*, which *Stein* applied. *McKune*, 536 U.S. at 40–41 (plurality opinion); *id.* at 49–50 (O'Connor, J., concurring). *Stein* held that the possibility of adverse inferences was not unconstitutionally compulsive, while *McKune* held that an automatic reduction in the quality of prison conditions was not unconstitutionally compulsive. *Stein*, 233 F.3d at 16; *McKune*, 536 U.S. at 47–48 (plurality opinion); *id.* at 48–49 (O'Connor, J., concurring). *McKune* only mentioned disbarment to state the holding of *Spevack*, that a threat of *automatic* disbarment was unconstitutionally compulsive, and the plurality cited approvingly *Woodard*'s allowance of adverse inferences in a clemency interview. *McKune*, 536 U.S. at 40, 43 (plurality opinion); *id.* at 49–50 (O'Connor, J., concurring). And *Stein* fits with our decision in *Hoxie*, 419 F.3d at 483. Nothing in *McKune* suggests the First Circuit was wrong in *Stein*.

- 17 -

Case No. 20-5479, *In re Justice*

privilege." *Id.* at 16.[7] We conclude that the First Circuit had it right in *Stein*, and that Justice was not unconstitutionally compelled to testify by the threat of adverse inferences.

*Third*, Justice argues that because the Hearing Panel did not tell him whether it would impose adverse inferences based on his decision not to testify, he could not make an "intelligent constitutional choice." (Appellant's Br. at 59.) But because drawing adverse inferences would not have been unconstitutional, Justice had the right impression. Knowing about the possibility of an adverse inference wasn't an impediment to an informed decision; it was good information. And the Fifth Amendment does not require that Justice "kn[ew] and underst[oo]d every possible consequence of a waiver of [his] Fifth Amendment privilege." *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (en banc) (quoting *Colorado v. Spring*, 479 U.S. 564, 574 (1987)). Justice knew that the Hearing Panel might impose adverse inferences, and he knew his Fifth Amendment right. So Justice could make an "intelligent constitutional choice."

*Fourth*, and finally, Justice argues that the "Tennessee Board unconstitutionally commented to the panel on Justice's exercise of his privilege successfully inducing prejudice" and that this "requires reversal," and he complains that the district court did not address this argument. (Appellant's Br. at 63.) But he cites no authority that supports his claim.[8] "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

---

[7] Justice also argues *Stein* conflicts with our decisions in *United States v. Alsante*, 812 F.3d 544 (6th Cir. 2016) and *Moody v. Michigan Gaming Control Board*, 790 F.3d 669 (6th Cir. 2015). But *Alsante* held that requiring a defendant to make a choice between testifying on his own behalf at a federal sentencing hearing at the risk of incriminating himself in ongoing state proceedings or remaining silent and potentially incurring a higher sentence was not compulsive. 812 F.3d at 548. We cited *Spevack* only as an example of what is compulsive—the threatened loss of a professional license, not the mere possibility of adverse inferences. *Id.* And *Moody* was a straightforward application of the principles of *Spevack* and *Garrity*, holding that the Michigan Gaming Control Board could not suspend the licenses of harness racers as an automatic consequence of their assertion of their Fifth Amendment rights. *Moody*, 790 F.3d at 673–75. Neither case conflicts with *Stein*.

[8] Justice may be referencing the Supreme Court's decision in *Griffin v. California*, 380 U.S. 609, 612–15 (1965), which held that a prosecutor may not comment on a defendant's exercise of his Fifth Amendment right. But *Griffin*'s holding was limited to the criminal context, and Justice has not asked us to extend it here. *Id.* at 615.

- 18 -

Case No. 20-5479, *In re Justice*

waived." *Gradisher v. City of Akron*, 794 F.3d 574, 586 (6th Cir. 2015) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)). We therefore need not consider this argument.

We find no Fifth Amendment violation in the Tennessee proceeding and thus no "grave reason" to question its conclusion.

### III.

Justice also raises several challenges to the district court proceedings independent of alleged deficiencies in the Tennessee proceedings. None of them are persuasive.

### A.

Justice argues that the district court erred by declining to review the record of the Tennessee proceedings. He points to Local Rule 83.6, which says that the district court "has the obligation and responsibility to interpret and apply the [Rules of Professional Conduct] and other rules and standards of conduct without being bound by the decisions of Tennessee courts, other courts, or agencies." E.D. Tenn. L.R. 83.6. The district court, he claims, could not avoid "being bound by the decisions of Tennessee courts" without reviewing the record of the Tennessee proceedings.

"Nothing in the record supports [Justice's] claim that the district court felt bound by the State's disbarment order" or otherwise did not independently consider the facts. *Cook*, 551 F.3d at 554. The district court looked not only at the findings of fact made by the Hearing Panel, the Chancery Court, and the Tennessee Supreme Court, but also to how Justice's representations before those tribunals conflicted with the findings of fact made by the district court in 2013. *Justice*, 2012 WL 2374677, at *8–21. "[F]ederal courts may give considerable weight to the findings and conclusion of the state courts in such disciplinary matters." *Cook¸* 551 F.3d at 550. Justice cites no authority for the claim that district courts must look at the record developed by the state courts in reciprocal disbarment cases. Yet the First Circuit has held that it is the responsibility

- 19 -

Case No. 20-5479, *In re Justice*

of the attorney facing discipline "to ensure that the whole of the record is furnished to the court in a timely manner and to identify the parts of the record upon which he relies." *In re Williams*, 398 F.3d 116, 119 (1st Cir. 2005). And Justice never sought to introduce the state record other than a small sample of his Panel transcript, which he relied on in his response to the Show Cause Order.

The district court did not abuse its discretion by not reviewing the entire state court record sua sponte.[9]

## B.

Justice claims that he "cannot be punished by the district court again for the same conduct." (Appellant's Br. at 29.) But Justice does not develop this apparent allusion to a double jeopardy argument. We therefore decline to consider it. *See Gradisher*, 794 F.3d at 586.

## C.

Justice argues that *Ruffalo* requires an evidentiary hearing before imposing discipline. But *Ruffalo* requires only "that when proceedings for disbarment are 'not taken for matters occurring in open court . . . notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defence.'" 390 U.S. at 550 (quoting *Randall v. Brigham*, 74 U.S. (7 Wall.) 523, 540 (1868)). And "there is no entitlement to a de novo trial before the [d]istrict [c]ourt" in reciprocal disbarment proceedings. *In re Surrick*, 338 F.3d 224, 232 (3d Cir. 2003) (emphasis omitted). The district court gave Justice ample opportunity to answer the charges against him both in his response to the Show Cause Order and his objections to the magistrate judge's

---

[9] This claim is particularly unpersuasive because Justice asked the Chancery Court to declare the transcript of the Hearing Panel proceedings "unreliable," (R. 90-2, Ch. Order, PageID # 5863), and because he suggested the court reporter destroyed an audio recording of the Hearing Panel proceedings, (R. 90-3, Ch. Final Order, PageID # 5888). Justice cannot attack the reliability of the of the state record and then reasonably insist the district court erred by not reviewing it. And he does not suggest that he tried to submit additional Tennessee materials to the district court and was denied.

- 20 -

Case No. 20-5479, *In re Justice*

Report and Recommendation. The district court therefore did not abuse its discretion by not holding a new evidentiary hearing.

### IV.

Our review of the district court is deferential, and we find none of the arguments Justice advances persuasive. We therefore **AFFIRM** the district court's order disbarring Loring Justice.

- 21 -